IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| DEBBIE L. DOWELL | ) |
| | ) |
| v. | ) No. 3:14-1314 |
| | ) |
| JOHN M. MCHUGH, Secretary | ) |
| Department of the Army | ) |

TO:   Honorable Aleta A. Trauger, District Judge

### REPORT AND RECOMMENDATION

By Order entered August 4, 2014 (Docket Entry No. 10), this action was referred to the Magistrate Judge for case management, decision on all pretrial, nondispositive motions and report and recommendation on all dispositive motions under 28 U.S.C. §§ 636(b)(1), and to conduct any necessary proceedings under Rule 72 of the Federal Rules of Civil Procedure.

Presently pending before the court is the Defendant's motion for partial dismissal (Docket Entry No. 18) and the Plaintiff's motion for summary judgment (Docket Entry No. 27). Set out below is the court's recommendation for disposition of the motions.

### I. BACKGROUND

The Plaintiff is a federal employee who works as a civil engineer. She currently works for the Bureau of Indian Affairs,[1] but previously worked for the United States Army Corp of Engineers ("USACE"). It is her employment with the USACE that is at issue in this lawsuit.

The Plaintiff was employed for several years at a GS-11 pay grade in the Louisville District, Construction Division, Fort Campbell Resident Office until she was transferred, upon her request,

---
[1] See Declaration of Eric J. Pagoria (Docket Entry No. 34), at ¶ 2.

to the Nashville District, Engineering-Construction Division, Nashville Resident Office ("NRO") on or about October 2008. She contends that, after completing a probationary period, she was hired at the NRO, where she remained until applying for and taking her current position with the Bureau of Indian Affairs in November 2014.

The Plaintiff alleges that, although there was an open vacancy for a civil engineer position at a higher GS-12 pay grade in the NRO, she was not placed in that position either at the time of her transfer or at the time of her permanent hire at the NRO. She further alleges that, over the course of working at the NRO from 2009 to 2014, she performed the job duties associated with a GS-12 civil engineer position, in addition to the GS-11 job duties, yet she was never considered for a promotion to the GS-12 position. She maintains that, instead of promoting her to the GS-12 position, which would have been consistent with the job duties she was performing, Johnny Wilmore, the Chief of Construction at the NRO, purposefully created a formerly non-existent GS-11 civil engineer position at the NRO, in which the Plaintiff remained until leaving the NRO. She contends that this was inconsistent with the recent history of the civil engineer positions at the NRO, which had previously encompassed only GS-12 civil engineer positions, and with the composition of other Engineering-Construction Division offices that also had only GS-12 civil engineer positions. The Plaintiff alleges that she was the only civil engineer in the division who had not been promoted or placed in a GS-12 position. See Amended Complaint (Docket Entry No. 14), at 12-19.

The Plaintiff alleges that throughout her employment at the NRO, David Loyd, one of her NRO supervisors, led her to believe that she had not received a promotion to a GS-12 position because of a lack of funding. However, she asserts that in 2012 she became aware from an intern whom she was training that the intern expected to be automatically promoted to a GS-12 position after completing one year in a GS-11 position. The Plaintiff states that she thereafter requested that Loyd consider her for a promotion to a GS-12 position since she had been in the GS-11 position for approximately six years, but that Loyd ignored her request. Id.

On May 23, 2012, the Plaintiff, who is black, contacted an official with the Department of the Army's Equal Employment Opportunity Office ("EEOO") about her belief that she was being discriminated against because of her race. See Docket Entry No. 20-1, at 2. She later filed a written complaint of discrimination, dated July 31, 2012, in which she alleged that 1) she had been discriminated against because of her race, and 2) she had been the victim of reprisal. Id. at 1. On August 14, 2012, the EEOO accepted for investigation the Plaintiff's claims that: 1) she was discriminated against on "the basis of [her] race (Black) in management's failure to promote [her] to GS-12" although she alleged she was performing duties at the GS-12 or above level; and 2) she was the victim of reprisal for initiating her pre-complaint when she was "publically humiliated/demoted at a groundbreaking ceremony on June 18, 2012." See Docket Entry No. 20-2, at 1-2. On November 19, 2012, the Plaintiff's administrative complaint was amended to add a second claim of unlawful retaliation based upon allegations that, because she had filed the EEO complaint, the NRO supervisors had "ceased a pending Noncompetitive Accretion of Duties Promotion," a procedure that was aimed at assessing her current duties. See Docket Entry No. 20-3. After an administrative investigation of the complaint, the Plaintiff requested a hearing, but an administrative judge dismissed the complaint on June 9, 2014, after the Plaintiff withdrew the complaint so that she could pursue remedies in federal court. See Docket Entry No. 20-6.

On June 18, 2014, the Plaintiff filed the instant action pro se under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), alleging that the Department of the Army unlawfully failed to promote her because of her race and further unlawfully retaliated against her for having filed a charge of discrimination.[2] The circumstances of the discrimination are set out by the Plaintiff in her complaint as follows:

1. The Plaintiff was discriminated against based upon her race (Black) when she was discriminatorily assigned to an established GS-12 Civil Engineering position upon

---

[2] On August 12, 2014, the Plaintiff filed an Amended Complaint in response to the court's directive that she sign her complaint. See Order entered August 6, 2014 (Docket Entry No. 12). The Amended Complaint is identical to the original complaint.

3

her transfer to the Nashville District, but was only given GS-11 pay to perform the duties of the position due to her race; and

2. The Plaintiff was discriminated against based upon her race (Black) and subjected to reprisal when the Agency ceased a pending Noncompetitive Accretion of Duties Promotion initiated by Plaintiff's Supervisor, upon being made aware that Plaintiff had filed a complaint with the Nashville EEO Office.

See Amended Complaint, at 3, ¶ 9. The Plaintiff also attaches to her Amended Complaint a seven page narrative of supporting factual allegations, id. at 12-19, and several pages of exhibits. Id. at 13-70. The Plaintiff alleges that the violations are still being committed and seeks as relief back pay, as well as equitable relief in the form of a directive that she be promoted to the GS-12 pay level.[3]

In lieu of an answer, the Defendant filed the pending motion for partial dismissal of the Plaintiff's claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that the Plaintiff failed to exhaust administrative remedies. The Plaintiff has responded in opposition to the motion to dismiss. See Docket Entry No. 24. Also before the court is the Defendant's reply (Docket Entry No. 25) and the Plaintiff's sur-reply (Docket Entry No. 26).[4]

In addition to responding in opposition to the motion for partial dismissal, the Plaintiff filed her own motion for summary judgment seeking judgment as a matter of law on her claims. The Defendant has not responded to the Plaintiff's motion but has filed a motion to stay (Docket Entry No. 29), seeking an order permitting it to file its response to the motion for summary judgment upon the court's resolution of the motion for partial dismissal and upon the completion of discovery. The Plaintiff opposes such a stay.

---

[3] Subsequent to the Defendant's filing the motion to dismiss, the Plaintiff filed a motion (Docket Entry No. 32) to supplement her complaint. By separately entered Order, the court granted the motion to the extent that the Plaintiff seeks to amend her request for relief to 1) remove her request for equitable relief in the form of a promotion to a GS-12 grade, and 2) include a request for compensatory damages for "future pecuniary losses." Id. at 2. However, the court denied the motion to the extent that the Plaintiff seeks to assert a claim of "wrongful discharge by way of constructive termination." Id.

[4] The Plaintiff filed a motion to strike (Docket Entry No. 26) the reply filed by the Defendant. By separately entered Order, the court denied the motion but construed the motion as the Plaintiff's sur-reply.

## II. MOTION TO DISMISS

The Defendant's motion to dismiss raises only technical arguments about whether the Plaintiff has properly exhausted her claim that she was not promoted at the NRO because of her race. The Defendant's motion does not seek dismissal on the substantive merits of the Plaintiff's claims.

The Defendant argues that the Plaintiff's allegation that she was "discriminated against based upon her race (Black) when she was assigned to an established GS-12 Civil Engineer position upon her transfer to the Nashville District in 2008, but was only given GS-11 pay to perform the duties of the position, due to her race," as stated in the Amended Complaint at 3, ¶ 9.1, is a claim that was not asserted in the administrative EEO complaint that the Plaintiff filed and a claim that was not accepted by the EEOO for investigation.

The Defendant also contends that any allegations made by the Plaintiff concerning her initial job placement at the NRO, as referred in the allegations set out in the Amended Complaint at 3, ¶ 9.1, and at 2, ¶ 5, concern events that occurred in 2008. The Defendant argues that, under 29 C.F.R. § 1614.105(a)(1), a federal employee, such as the Plaintiff, is required to consult with an EEO counselor within 45 days of the allegedly discriminatory incident in order to timely exhaust her administrative remedies. The Defendant asserts that the Plaintiff's first EEO contact was on May 23, 2012, and thus the Plaintiff should be prohibited from asserting that she was subject to discriminatory acts that allegedly occurred prior to April 8, 2012, 45 days prior to the initial date of the Plaintiff's EEO contact.

## III. STANDARD OF REVIEW

A motion to dismiss filed under Rule 12(b)(6) of the Federal Rules of Civil Procedure is reviewed under the standard that the court must accept as true all of the allegations contained in the complaint, resolve all doubts in the plaintiff's favor, and construe the complaint liberally in favor of the pro se plaintiff. See Kottmyer v. Maas, 436 F.3d 684 (6th Cir. 2006); Boswell v. Mayer, 169 F.3d 384, 387 (6th Cir. 1999); Morgan v. Church's Fried Chicken, 829 F.2d 10, 11-12 (6th Cir.

1987). However, although a complaint need not contain detailed factual allegations, the plaintiff must provide the grounds for her entitlement to relief and this "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (abrogating Conley v. Gibson, 355 U.S. 41 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).[5]

## IV. CONCLUSIONS

A. Defendant's Motion to Dismiss

A Plaintiff bringing a lawsuit under Title VII alleging discrimination must exhaust administrative remedies prior to filing her lawsuit. This requires the Plaintiff to first file an administrative charge with the appropriate EEO Office within a certain time after the occurrence of the alleged wrongful act or acts and to include in her charge those claims that are later asserted in a lawsuit. Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010).

### 1. Scope of the Alleged Claims

Only those claims that are included in the administrative complaint may normally be pursued in a subsequent lawsuit. Younis, supra. The policy or purpose of this aspect of the exhaustion requirement "is to trigger an investigation, which gives notice to the alleged wrongdoer of its potential liability and enables the EEOC to initiate conciliation procedures in an attempt to avoid litigation." Dixon v. Ashcroft, 392 F.3d 212, 217 (6th Cir. 2004) (citation omitted). However, the

---

[5] Although it is generally the case that the court does not consider matters outside of the pleadings when ruling on a motion to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Weiner v. Klais & Co., 108 F.3d 86, 88–89 (6th Cir. 1997), the court may "consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999), overruled on other grounds by Swierkiewicz v. Sorema, N.A. 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). An EEOC charge is a public record. Faibisch v. University of Minn., 304 F.3d 797, 802–03 (8th Cir. 2002); Rhea v. Dollar Tree Stores, Inc., 395 F.Supp.2d 696, 703 (W.D. Tenn. 2005).

requirement "is not meant to be overly rigid, nor should it 'result in the restriction of subsequent complaints based on . . . the failure of the charges to contain the exact wording which might be required in a judicial pleading.'" Randolph v. Ohio Dep't of Youth Servs., 453 F.3d 724, 732 (6th Cir. 2006) (quoting EEOC v. McCall Printing Co., 633 F.2d 1232, 1235 (6th Cir.1980)). Consequently, an EEOC complaint should be liberally construed to encompass all claims "reasonably expected to grow out of the charge of discrimination." Haithcock v. Frank, 958 F.2d 671, 675 (6th Cir. 1992). Under the "expected scope of investigation" test, a plaintiff may fully exhaust her administrative remedies on a claim even if the claim was not actually investigated by the EEOC or specifically stated in the administrative charge or complaint. See Dixon, 392 F.3d at 217. Moreover, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." Weigel v. Baptist Hosp. of E. Tenn., 302 F.3d 367, 380 (6th Cir. 2002) (quoting Davis v. Sodexho, Cumberland Coll. Cafeteria, 157 F.3d 460, 463 (6th Cir.1998)).

In the instant action, the Plaintiff's EEO complaint stated that "she was discriminated against on the basis of race (Black) in management's failure to promote her to GS-12 though she alleges she was performing duties at the GS-12 or above level," and listed the date of May 23, 2012, as the date the discrimination occurred. See Docket Entry No. 20-1, at 4. The claim in her Amended Complaint, as alleged in ¶ 9.1, is that she was "discriminated against based upon her race (Black) when she was discriminatorily assigned to an established GS-12 Civil Engineer position upon her transfer to the Nashville District in 2008, but was only given GS-11 pay to perform the duties of the position, due to her race." See Docket Entry No. 14, at 3, ¶ 9.1. The court finds that the allegation set out in ¶ 9.1 was encompassed within the EEO administrative proceedings and, thus, was exhausted by the Plaintiff. To the extent that there is a subtle distinction between the two allegations, a fair reading of the Plaintiff's EEO complaint indicates that the Plaintiff clearly intended in the EEO proceeding to allege that she has been discriminated against on the basis of her race 1) when she was not initially placed in a GS-12 position at the NRO and 2) when she was

7

continuously kept in a GS-11 position instead of being promoted to a GS-12 position during her several years of employment at the NRO. At the very least, the allegation in the Amended Complaint is so closely related to the EEO charge of discrimination made by the Plaintiff that it can be said to reasonably be expected to grow out of the EEO charge made by the Plaintiff. This is especially so given that the Plaintiff acted pro se in initiating her EEO complaint and is acting pro se in the instant lawsuit. See Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (6th Cir. 2000); Haithcock, 958 F.2d at 675; Love v. TVA Bd. of Directors, 2008 WL 906115, *12 (M.D. Tenn. Mar. 31, 2008) (Haynes, J.). Likewise, the court cannot reasonably construe the Plaintiff's statement in her EEO complaint that discriminatory acts related to her claim of a wrongful failure to promote were committed on May 23, 2012, see Docket Entry No. 20-1, at 4, to mean that the acts about which she was complaining actually occurred only on May 23, 2012. That date, when read in the context of her entire complaint, obviously indicated only the date that she made contact with an EEO Officer after coming to the conclusion that she was being discriminated against. See Docket Entry No. 20-1.

B. Timeliness of the EEO Complaint

The timely filing of an EEOC charge of discrimination is also a prerequisite to a Title VII suit. 42 U.S.C. § 2000e-5(e)-(f); Puckett v. Tennessee Eastman Co., 889 F.2d 1481, 1486-88 (6th Cir. 1989). The Sixth Circuit has articulated the requirement that federal employees exhaust their administrative remedies as follows:

> "The right to bring an action under Title VII regarding equal employment opportunity in the federal government is predicated upon the timely exhaustion of administrative remedies, as set forth in the [EEOC regulations]." Benford v. Frank, 943 F.2d 609, 612 (6th Cir. 1991); see also Brown [v. Gen. Servs. Admin., 425 U.S. 820, 829–35 (1976)]. Under 29 C.F.R. § 1614.105(a)(1), an aggrieved employee "must initiate contact with an EEO counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action" in order to facilitate informal resolution of the dispute. Failure to timely seek EEO counseling is grounds for dismissal of the discrimination claims. Benford, 943 F.2d at 612.

Hunter v. Secretary of U.S. Army, 565 F.3d 986, 993 (6th Cir. 2009).

8

In determining the triggering date for the applicable limitations period, the Supreme Court has explained that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 110, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Accordingly, discrete acts of discrimination about which the Plaintiff was aware when they occurred must be included in a timely charge of discrimination or they are no longer actionable in a subsequent Title VII lawsuit. Id. at 113; Bell v. Ohio State Univ., 351 F.3d 241, 248 (6th Cir. 2003); Haithcock, 958 F.2d at 675; Broadway v. United Parcel Serv., Inc., 499 F.Supp.2d 992, 999-1000 (M.D. Tenn. 2007) (Trauger, J.). A time-barred discrete act is not actionable even if the act is related to an act alleged in a timely filed charge. Id. at 113. See also Burus v. Wellpoint Cos., Inc., 434 Fed.App'x 475 (6th Cir. 2011) (per curiam).

Employment decisions or acts about which a plaintiff is aware when they occurred and which are easily identifiable are discrete acts of discrimination that must be timely pursued on the administrative level to be actionable. See Morgan, 536 U.S. at 114. An employer's alleged wrongful failure to promote an employee is a discrete act. Morgan, 536 U.S. at 114; El-Zabet v. Nissan North Amer., Inc., 211 Fed. Appx. 460, 464 (6th Cir. 2006); Nicholson v. City of Clarksville, 2011 WL 4729759, *4 (M.D. Tenn. Oct. 5, 2011) (Trauger, J.). Similarly, an employer's initial hiring decision is such a discrete act. Thus, the Plaintiff's claim that, because of her race, she was placed in a GS-11 position upon her transfer to the NRO in 2008 and was denied a promotion from a GS-11 position to a GS-12 position while at the NRO is a claim based upon discrete acts that must have been brought before the EEO within 45 days of when they occurred. Nicholson, supra. The Plaintiff argues that she timely pursued an EEO complaint based upon the events occurring prior to April 8, 2012, because she filed her complaint as soon as she became aware of information that led her to believe that she was being discriminated against. However, the limitations period begins to run when the Plaintiff has knowledge of the employment decision, practice, or action at issue, not when the Plaintiff becomes aware of the consequences of the act or when she learns that the motivation

9

for the decision might have been discriminatory. Amini v. Oberlin Coll., 259 F.3d 493, 498-99 (6th Cir. 2001).

Nonetheless, the Plaintiff also argues that she should be afforded an extended period of time under 29 C.F.R. § 1614.105(a)(2),[6] within which to have made contact with an EEO counselor because "she did not and reasonably should not have known" that she had suffered racial discrimination in being placed and kept in a GS-11 position. She also alleges that her supervisors at the NRO purposefully created a formerly non-existent GS-11 position for her instead of placing her in a GS-12 position and further led her to believe that the reason she had never been promoted to a GS-12 position in the several years she worked at the NRO was because of a lack of funding. See Amended Complaint, at 13-14 and 18. The Plaintiff's arguments and allegations raise the specter of principles of equitable tolling and, given the Plaintiff's pro se status, the court must afford the Plaintiff's filings a measure of liberal construction and shall address equitable arguments that may apply.

The statutory time limits applicable to Title VII claims are subject to equitable tolling, waiver, and estoppel. Mitchell v. Chapman, 343 F.3d 811, 820 (6th Cir. 2003). Equitable tolling does not delay the start of the limitations clock, but rather halts its ticking after the limitations period has accrued. Amini, 259 F.3d at 498-500. The following five factors are relevant to a determination of whether tolling should be allowed: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. Seay v. Tennessee Valley Auth., 339 F.3d 454, 469 (6th Cir. 2003).

---

[6] 29 C.F.R. § 1614.105(a)(2) allows for an extension of the 45 day period when:

> the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the commission.

10

However, these factors are not comprehensive and are not material in all cases; rather, applicability of equitable tolling must be determined on a case-by-base basis. Id; Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir. 2000).

Although equitable tolling is typically sparingly applied, see Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990), when a defendant employer is alleged to have taken actions that misled the Plaintiff or misrepresented the circumstances surrounding the challenged employment action, equitable tolling is warranted because the plaintiff has been prevented from having critical information that would have raised suspicions about possible unlawful discrimination. See Dixon v. Gonzales, 481 F.3d 324, 330-31 (6th Cir. 2007); Seay, supra; Neineier v. Wynne, 2007 WL 2326880, *9-10 (S.D. Ohio Aug. 10, 2007).

In the instant action, the Plaintiff alleges that she relied upon the representations of her supervisors that a placement or promotion to a GS-12 position was not a possibility when, in fact, those representations were false and a placement or promotion from a GS-11 to a GS-12 position was possible and that white engineers had been promoted merely upon the passage of a one year period of employment in a GS-11 position. See Docket Entry No. 14, at 18. Given that the exhaustion defense has been raised in the posture of a motion to dismiss, the court must assume the Plaintiff's allegations to be true. While discovery and further proceedings may ultimately show that equitable estoppel should not apply based upon undisputed facts, at this point in the proceedings, there are sufficient facts alleged to support the application of equitable estoppel such that the Plaintiff's claim for a failure to promote is not restricted to only those events that occurred prior to April 8, 2012.

B. The Plaintiff's Motion for Summary Judgment

The Plaintiff seeks summary judgment on the merits of her Title VII claims. However, discovery has not yet occurred and an order scheduling pretrial activity has not yet been entered. Accordingly, resolving issues related to the merits of the claims at this stage of the proceedings is

premature, and the Plaintiff's motion should be denied without prejudice to being re-filed at a later time.

## R E C O M M E N D A T I O N

Accordingly, the court respectfully RECOMMENDS that:

1) the Defendant's motion for partial dismissal (Docket Entry No. 18) be DENIED; and

2) the Plaintiff's motion for summary judgment (Docket Entry No. 27) be DENIED WITHOUT PREJUDICE to being re-filed.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation upon the party and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge