IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

DEBBIE L. DOWELL           )
                                )
v.                          )     No. 3:14-1314
                                )
ROBERT M. SPEER, Acting Secretary )
Department of the Army[1]       )

TO:    Honorable Aleta A. Trauger, District Judge

## R E P O R T   A N D   R E C O M M E N D A T I O N

By Order entered August 4, 2014 (Docket Entry No. 10), this action was referred to the Magistrate Judge for pretrial proceedings under 28 U.S.C. §§ 636(b)(1) and Rule 72 of the Federal Rules of Civil Procedure.

Presently pending before the Court are the parties' competing motions for summary judgment.  *See* motion for summary judgment (Docket Entry No. 115) of Debbie Dowell ("Plaintiff") and motion for summary judgment (Docket Entry No. 125) of the Secretary of the Army ("Defendant").  Both parties have filed various responses, replies, and sur-replies related to the motions.  For the reasons set out below, the undersigned Magistrate Judge  respectfully RECOMMENDS that Plaintiff's  motion for summary judgment (Docket Entry No. 115) be DENIED and that Defendant's motion for summary judgment (Docket Entry No. 125) be GRANTED and this action be DISMISSED WITH PREJUDICE.

---

[1]John M. McHugh was the Secretary of the Army at the time this case was commenced. He retired during the pendency of this case, and at least one of his successors was substituted as the named defendant. *See* Docket Entry No. 130, n.1.  Robert M. Speer took office as Acting Secretary on January 20, 2017, and pursuant to Fed. R. Civ. P. 25(d) was automatically substituted as Defendant.

## I. BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a federal employee who works as a civil engineer. She currently works for the Bureau of Indian Affairs, but previously worked for the United States Army Corp of Engineers ("USACE") from 2004 to November 29, 2014, when she moved to her current job.[2] It is her employment with the USACE that is at issue in this lawsuit.

Plaintiff worked for several years in the Louisville District, Construction Division, Fort Campbell Resident Office ("Louisville District" or "LRL"), where she had advanced to a GS-11 pay grade. In the Fall of 2008, she asked her supervisor about the possibility of working in the Nashville District, Engineering-Construction Division ("Nashville District" or "LRN"). Upon the approval of Johnny Wilmore ("Wilmore"), the Chief of the Construction Branch for the Nashville District at the time, Plaintiff was permitted to begin working in the Nashville District's Nashville Resident Office ("NRO" or "NVL") on or about November 10, 2008. The NRO was closer to Plaintiff's residence than was the Fort Campbell Office. Plaintiff remained within the Nashville District until taking her current position with the Bureau of Indian Affairs. While at the NRO, Plaintiff's first level supervisor was David Loyd ("Loyd").

Plaintiff alleges that her move to the NRO was a transfer to an established civil engineer position at the NRO that was paid at a higher level than GS-11, but that her salary was not adjusted to the higher pay level when she arrived at the NRO.[3] She further alleges that instead of promoting her to the higher pay level position, which would have been consistent with the job duties that she was performing at the NRO, Wilmore created a formerly non-existent civil engineer position at the

---

[2] *See* Declaration of Eric J. Pagoria (Docket Entry No. 34), at ¶ 2.

[3] At the time, the Nashville Division was not using the General Schedule ("GS") pay system in place at the Louisville Division, but was using the National Security Personnel System ("NSPS") pay system, which classified positions by reference to "YD" pay bands. At some point in 2009, the NSPS was cancelled, and the Nashville Division subsequently began restoring employees to the GS pay system. Plaintiff's pay level was converted to a GS-11 on May 23, 2010. *See* Docket Entry No. 19-3.

NRO that had roughly the same salary as her Fort Campbell Office GS-11 position. Plaintiff was formally reassigned to this position at the NRO on March 20, 2009. *See* Docket Entry No. 117-1.

Plaintiff further alleges that during her time at the NRO, she performed job duties that are associated with the duties of a GS-12 level civil engineer, in addition to her other duties, yet she was never promoted. She contends that this was inconsistent with the recent history at the NRO, which had previously encompassed only GS-12 level civil engineers, and with the composition of other Engineering-Construction Division offices that also had only GS-12 level civil engineers. Plaintiff alleges that Loyd led her to believe she had not received a promotion because of a lack of funding. However, she asserts that she became aware in 2012 from Megan Kentner ("Kentner"), an intern whom she was training, that Kentner expected to be automatically promoted to a GS-12 level position after completing one year in a GS-11 level position. Plaintiff states that she thereafter requested that Loyd consider her for a promotion since she had been in the GS-11 level position for approximately six years, but that Loyd ignored her request. *Id*.

On May 23, 2012, Plaintiff, who is black, contacted an official with the Department of the Army's Equal Employment Opportunity ("EEO") Office about her belief that she was being discriminated against because of her race. *See* Docket Entry No. 20-1, at 2. She later filed a written complaint of discrimination, alleging that she had been discriminated against because of her race and that she had been the victim of reprisal.[4] *Id*. at 1. The administrative complaint was subsequently amended to add a second claim of unlawful retaliation based upon allegations that, because Plaintiff had filed the EEO complaint, her NRO supervisors had ceased a pending Noncompetitive Accretion of Duties Promotion ("the accretion process"), a procedure that had been initiated by Lloyd to assess her current duties in order to determine whether a noncompetitive promotion was warranted. *See* Docket Entry No. 20-3. An administrative investigation of the complaint occurred but Plaintiff

_____

[4] Plaintiff alleged an act of retaliation that occurred at a groundbreaking ceremony on June 18, 2012, *see* Docket Entry No. 20-2, at 1-2, but this allegation is not the basis for a claim in her lawsuit.

withdrew the complaint so that she could pursue remedies in federal court. *See* Docket Entry No. 20-6.

On June 18, 2014, Plaintiff filed the instant action *pro se* under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), alleging that Defendant unlawfully discriminated against her because of her race and unlawfully retaliated against her for having filed a charge of discrimination. *See* Complaint (Docket Entry No. 1). As set out in her subsequent Second Amended Complaint, Plaintiff's specific claims are as follows:

> 1. The Plaintiff was discriminated against based upon her race (Black) when she was discriminatorily transferred to an established GS-12 Civil Engineer position description under the National Security Personnel System (NSPS) upon her transfer to the Nashville Resident Office in 2008, but was only paid a GS-11 grade or GS-11 equivalent salary to perform the duties of the position from 2008 to 2014, due to her race;
>
> 2. The Plaintiff was discriminated against based upon her race (Black) and subjected to reprisal when the Agency ceased a pending Noncompetitive Accretion of Duties Promotion initiated by Plaintiff's Supervisor, upon being made aware that Plaintiff had filed a complaint with the Nashville EEO Office;
>
> 3. The Plaintiff was discriminated against based upon her race (Black) when she was paid less than Caucasian male engineers to perform the same or greater duties in the Nashville Resident Office; and
>
> 4. The Defendant discriminated against Plaintiff based upon her race (Black), committed fraud, and misused tax-payer funds when he falsified official Government documents to make it appear that a Caucasian male was performing the GS-12 grade or equivalent duties in the Nashville Resident Office, which the Plaintiff was actually performing.

Second Amended Complaint (Docket Entry No. 66), at 2-3.[5] Plaintiff seeks an award of back pay and compensatory damages, as well as equitable relief. *Id*. at 8-9.

## II. MOTIONS FOR SUMMARY JUDGMENT

In her motion, Plaintiff argues that she is entitled to summary judgment as a matter of law on each of her claims. She contends that there are no material facts at issue and that the Court should

---

[5] Although Plaintiff alleged two other claims in her Second Amended Complaint, the claims were withdrawn by her. *See* Order entered February 28, 2016 (Docket Entry No. 93).

issue an order finding that Defendant unlawfully discriminated against her on the basis of race when Defendant: (1) intentionally misrepresented the identity of the higher-level position that Plaintiff filled upon her movement to the NRO on November 10, 2008; (2) denied Plaintiff an increase in salary (i.e. a promotion) to perform the higher-level duties; and, (3) denied Plaintiff equal pay for performing equal or greater work to the work which was historically performed by similarly-situated Caucasian male engineers. *See* Docket Entry No. 115 at 1. She further contends that Defendant "falsified official government documents in order to acquire and embezzle public funds received for a 'ghost employee' whom the Defendant fraudulently reported as working in the Plaintiff's office throughout the period at issue instead of Plaintiff, and subsequently retaliated against the Plaintiff for engaging in protected activity." *Id*. at 1-2.

In his motion, Defendant argues that he is entitled to summary judgment as a matter of law because Plaintiff cannot support a *prima facie* case as to any of her allegations, nor can she prove that Defendant's proffered legitimate business reasons supporting his actions were a pretext for racial discrimination or unlawful retaliation. Defendant first disputes Plaintiff's allegation that her move to the Nashville Division in November 2008 occurred as the result of a permanent transfer or a promotion to an open or existing position at the NRO that entitled her to any type of pay increase. Defendant asserts that Plaintiff was, instead, permitted to work in the Nashville Division at the NRO pursuant to a temporary detail to accommodate her request to move out of the Fort Campbell Office. Defendant asserts that Plaintiff was reassigned to the Nashville Division on March 29, 2009, so that she could permanently work in the Nashville Division and that a GS-11 pay level position at the NRO was classified to enable the reassignment and was consistent with her position and pay status in the Louisville Division prior to the temporary detail. Defendant also disputes that an open GS-12 level engineer position ever existed at the NRO for which Plaintiff was prevented from applying and denies that Plaintiff's work duties at the NRO entitled her to an automatic promotion, even though some duties may have been akin to those performed by a GS-12 level engineer. In light of these facts, Defendant contends that Plaintiff cannot show that she suffered an adverse employment action.

Defendant further contends that Plaintiff was not paid unequally in comparison to other Caucasian engineers in the NRO, all of whom Defendant asserts were already classified at a GS-12 or higher level, had job duties that were more involved than those performed by Plaintiff, or differed in some other significant manner from Plaintiff.

With respect to the accretion process, Defendant admits that such a process was initiated in 2012 to determine if Plaintiff's duties warranted a noncompetitive promotion to a GS-12 position. Defendant contends that the accretion process was halted at the direction of James "Jimmy" Waddle ("Chief Waddle"), who was the Chief of the Nashville District at the time and was Plaintiff's third level supervisor, because Waddle determined that Plaintiff was not qualified to be a GS-12 civil engineer and, as a result, he could not support further processing of the accretion process package. Defendant argues that the cessation of the accretion process did not amount to an adverse action, that there is no evidence establishing a causal connection between the cessation of the accretion process and Plaintiff's EEO activity, and that Defendant's explanation for why the accretion process was stopped amounts to a legitimate, nondiscriminatory reason that is not pretext for either racial discrimination or retaliation.

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd.*, 475 U.S. 574, 587, 106 S.Ct.

1348, 89 L.Ed.2d 538 (1986); *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir.), *cert. denied*, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." *Goins v. Clorox Co.*, 926 F.2d 559, 561 (6th Cir. 1991). *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. *See Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). To defeat a summary judgment motion, the party opposing the motion must present affirmative evidence to support the party's position; a mere "scintilla of evidence" is insufficient. *Bell v. Ohio State Univ.*, 351 F.3d 240, 247 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

The standard of review for cross-motions of summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation. *Taft Broad. Co. v. U.S.*, 929 F.2d 240, 248 (6th Cir.1991).

> The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other; summary judgment in favor of either party is not proper if disputes remain as to material facts . . . [.] Rather, the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.

*Id.* (citations omitted).

## IV. CONCLUSIONS

### A. The Motions and the Record Before the Court

Before addressing the merits of the motions, the undersigned finds it necessary to note that the record presented to the Court by the parties made determining the issues at hand much more arduous than warranted by the relatively few number of claims in this action. Both parties have supported their motions with voluminous filings of evidentiary materials and have also filed several

respective responses, replies, and sur-replies, which are themselves accompanied by additional filings of evidentiary materials. *See* Docket Entry Nos. 115-122, 124-128, 130, and 138-147. The parties' filings are sorely lacking in conciseness. Indeed, the parties' attempts to comply with the statement of facts requirement of Local Rule 56.01(b) and (c) number in the hundreds of pages. Furthermore, evidentiary materials have been presented to the Court in a manner that is often convoluted, unclear, and unhelpful: some deposition excerpts have no identifiers clearly indicating whose deposition transcripts are being presented; some deposition excerpts and documents are presented multiple times; many deposition transcripts and documents have unexplained redactions; bits and pieces of documents, transcripts, and other evidence from the EEO complaint proceedings are often bundled together in single exhibits; and many documents are presented with no apparent foundational basis. It would be an exercise in futility to address every factual matter or evidence presented to the Court by the parties, and the undersigned has acknowledged only those matters and items of evidence that are both relevant and significant to the analysis of Plaintiff's claims.

Additionally, the Court finds absolutely no basis for Plaintiff's assertions that Defendant has presented "sham" declarations and has engaged in bad faith, *see* Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Docket Entry No. 140) at 1, or that Defendant has engaged in "unfathomable dishonesty, trickery, and deceit," *see* Plaintiff's Sur-reply (Docket Entry No. 145) at 1. Likewise, the Court finds no basis for the sanctions Plaintiff requests throughout her filings. *See e.g.* Docket Entry No. 140 at 1, Docket Entry No. 146 at 3, and Docket No. 147 at 48. While the intensity of contest in this litigation has resulted in voluminous and hyperbolic filings, the Court does not find that the actions of either party rise to the level of sanctionable conduct.

## B. Title VII and Racial Discrimination

Title VII of the Civil Rights Act of 1964 makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his [or her] compensation, terms, conditions or privileges of employment, because of such individual's . . . race ." 42 U.S.C. § 2000e-

2(a)(1). *See* 42 U.S.C. § 2000e–16 ("All personnel actions affecting [federal employees] shall be made free from any discrimination based on race, color, religion, sex, or national origin."). Plaintiff has not presented any direct evidence in support of her claims of racial discrimination.[6] Accordingly, her claims are analyzed under the burden-shifting analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), which allocates the burden of production for employment discrimination claims proven by indirect evidence.

Plaintiff must first establish a *prima facie* case of discrimination under this framework to create a rebuttable presumption of unlawful discrimination. Although the showing of a *prima facie* case can vary from case to case, generally, a plaintiff must demonstrate "that (1) he [or she] was a member of a protected class; (2) that he [or she] suffered an adverse employment action; (3) that he [or she] was qualified for the position; and (4) that a person outside the protected class was treated more favorably than him [or her]." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001). The fourth prong requires that the plaintiff show that the person treated more favorably was similarly situated to the plaintiff in all relevant respects. *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610-11 (6th Cir. 2002). "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 703 (6th Cir. 2007) (quoting *Macy v. Hopkins County Sch. Bd. of Education*, 484 F.3d 357, 365 (6th Cir. 2007).

Upon the showing of a *prima facie* case, the burden then shifts to Defendant to articulate a legitimate nondiscriminatory reason for the challenged action. *Burdine*, 450 U.S. at 254-56. Upon Defendant's proffer of a legitimate non-discriminatory reason, the burden shifts back to Plaintiff to

---

[6] Direct evidence of discrimination "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). "Evidence of discrimination is not considered direct evidence unless a racial motivation is explicitly expressed." *Amini v. Oberlin College*, 440 F.3d 350, 359 (6th Cir. 2006).

demonstrate that the proffered reason is pretextual, masking intentional discrimination. *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Throughout the burden-shifting analysis, the ultimate burden of persuading the trier of fact that Plaintiff was intentionally discriminated against by Defendant remains at all times with Plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511, 517-18, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004).[7]

## C. Plaintiff's First, Third, and Fourth Racial Discrimination Claims

After review of the voluminous materials in the record, the Court finds that the evidentiary support for Plaintiff's claims that she suffered racial discrimination, even when viewed in the light most favorable to Plaintiff, is not sufficient to warrant submitting these claims to a jury. Although Plaintiff has expended great effort to buttress her claims, no reasonable jury could find in favor of Plaintiff on her racial discrimination claims based upon the evidence that is before the Court. Any factual disputes that exist do not rise to the level of genuine issues of material fact. Summary judgment must therefore be granted in favor of Defendant on these three claims.

One of the showings required for a *prima facie* case is that Plaintiff suffered an adverse employment action. *See Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 185 (6th Cir. 2005); *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998). The challenged

---

[7]Because the ultimate question in any discrimination case "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion or other proscribed factor caused the discharge or other adverse action", *Ortiz v. Werner Enter. Inc.*, 834 F.3d 760, 765 (7th Cir. 2016), the Seventh Circuit relatively recently admonished trial courts in that circuit to "stop separating 'direct' from "indirect' evidence" and to instead, consistent with *McDonnell Douglas* and its progeny, put all the evidence in a "single pile" to be evaluated "as a whole" for its sufficiency in supporting the claims of discrimination. *Id*. at 765-66. Under either approach, Plaintiff's claims fail here.

employment action(s) must amount to a "materially adverse change in the terms or conditions of . . . employment" and "must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885-86 (6th Cir. 1996). As the Sixth Circuit noted, "[n]ot every act affecting an individual's employment can be considered an adverse employment action." *McMillian v. Potter*, 2005 WL 1140629, *3 (6th Cir. May 11, 2005) (citing *Burlington Indus.*, 524 U.S. at 761).

While Plaintiff may not have been pleased with her salary or her opportunity for advancement at the USACE, she has not shown that she suffered the type of adverse employment action necessary to support her Title VII claims. Plaintiff's first claim of racial discrimination is premised on her argument that, in November 2008, she was transferred from the Louisville District to the Nashville District and was assigned to an established GS-12 level position at the NRO upon her transfer. This premise is the linchpin for Plaintiff's claim that she was wrongfully kept at her prior GS-11 pay grade at the NRO and that Defendant falsely and wrongfully classified her into a GS-11 level position instead of promoting her to an open GS-12 level position at the NRO. However, no reasonable reading of the record supports this construct.

The documentary and testimonial evidence offered by Defendant is that: (1) Plaintiff was permitted to move to the Nashville District on a temporary detail on November 10, 2008, and remained at the NRO on the temporary detail until March 29, 2008; (2) Plaintiff's job position during the temporary detail officially remained with the Louisville Division and her pay as a GS-11 level civil engineer did not change because of the temporary detail; and, (3) Plaintiff was laterally reassigned to a GS-11 level civil engineer position at the NRO, not promoted to a GS-12 level position, on March 29, 2008. *See* Debbie Dowell SF-50 Forms (Docket Entry No. 117-1); Declaration of Wilmore (Docket Entry No. 120) at ¶¶ 6 and 8; Excerpts from Deposition of USACE Supervisory Human Resources Specialist Linda Miller (Docket Entry No. 212-2) and (Docket Entry No. 126-5); and Declaration of Linda Miller (Docket Entry No. 127), at ¶ 5.

Although Plaintiff disputes these facts, she has offered no actual evidence showing that her move from the Louisville District to the Nashville District on November 10, 2008, and her tenure there until March 29, 2009, was anything other than a temporary detail. Nor has she offered any actual evidence showing that her permanent reassignment, on March 29, 2009, was to a GS-12 level position. The morass of information advanced by Plaintiff as support for her claim, *see* Plaintiff's Motion for Summary Judgment (Docket Entry No. 115) at 4-10, and Plaintiff's Response to Defendant's Statement of Undisputed Facts (Docket Entry No. 141) at 2-18, simply does not create a genuine issue of material fact. There is no evidence showing that anyone other than Plaintiff considered her initial move to the NRO to be anything other than a temporary detail or considered her reassignment in March of 2009 to be a promotion or a transfer to a GS-12 level position. Plaintiff's subjective belief about the matter is not sufficient to support her claim. *See Policastro v. Northwest Airlines*, 297 F.3d 535, 539 (6th Cir. 2002) ("[A]n employee's subjective impressions as to the desirability of one position over another are not relevant.").

Nor can Plaintiff support a claim that she was wrongfully denied a promotion because of her race, which appears to be a part of her first claim even though not expressly stated as such. There is no evidence before the Court that Plaintiff's civil engineer position carried with it an automatic or self-executing promotion to the next higher pay grade and that she was denied such an automatic promotion.[8] There is also no evidence before the Court showing that a GS-12 level civil engineer position was vacant or became open within the NRO at any point after Plaintiff was reassigned to the Nashville District. Rather, the undisputed evidence shows that, although a GS-12 level civil engineer position at the NRO became vacant when engineer Donny Davidson moved to the USACE's Memphis District, this position was filled on March 15, 2009, **prior** to Plaintiff being

---

[8] The Court notes that even though Plaintiff was not promoted to a GS-12 pay grade at the NRO, her lateral reassignment to the NRO did result in a pay increase, *see* March 29, 2009 SF-50 (Docket Entry No. 117-1 at 1), and her salary increased from a GS-11, step 4 pay rate, which was her pay rate at the Louisville District, to a GS-11, step 6, pay rate by the time the Nashville District converted her salary from the NSPS pay scale to the GS pay scale on May 23, 2010. *See* May 23, 2010, SF-50 (Docket Entry No. 19-3).

permanently assigned to the NRO, by a civil engineer from the Hydraulics Branch of the Nashville Division, Chad Braun, who was already a GS-12 level engineer. *See* Affidavit of Wilmore at ¶ 7; and Chad Braun SF-50 Form (Docket Entry No. 126-12).

Plaintiff cannot point to evidence of a single instance when there was an open position at the NRO for which she applied and which was filled by someone other than herself, let alone filled by someone whom Plaintiff asserts was less qualified than her. Although Plaintiff alleges that Kentner, the white intern whom Plaintiff was training, expected to be automatically promoted to a GS-12 level position after completing one year in a GS-11 level position, this allegation fails to support Plaintiff's claim. Defendant's unrebutted evidence shows that Kentner was hired in the Nashville Division's Operations Division, not the Construction Division, and that she was hired under a program that provided for promotion to the GS-12 level, both of which are factors distinguishing her from Plaintiff. *See* Declaration of Linda Miller (Docket Entry No. 127) at ¶ 2.[9]

A *prima facie* case based upon failure to promote allegations generally requires that there be an actual open position for which the plaintiff applied and was rejected. *See Watson v. City of Cleveland*, 202 Fed.App'x 844, 855 (6th Cir. 2006). Merely inquiring about a promotion is not sufficient. *Id*. *See also Keller v. Fifth Third Bank*, 2011 WL 161649 at *4 (M.D. Tenn. Jan. 18, 2011) (Trauger, J.) (the plaintiff failed to show a *prima facie* claim of failure to promote because she never applied for a promotion despite repeatedly communicating her desire to achieve a promotion and because she failed to show that a similarly qualified male was promoted instead of her). The evidence before the Court, even when viewed in the light most favorable to Plaintiff, simply fails to show that Plaintiff was wrongfully denied an available promotion to a higher salaried position.

Plaintiff's third claim of racial discrimination is that she was paid less than other Caucasian engineers at the NRO despite performing the same or greater duties. This claim likewise lacks support from the evidence before the Court. Initially, it is undisputed that the engineers to whom

---

[9]Moreover, Plaintiff failed to offer any evidence that Kentner was actually promoted to a GS-12 pay level.

Plaintiff compares herself – Donny Davidson, Chad Braun, and Mike Lee – are all engineers who were already working at a GS-12 or higher pay grade level when Plaintiff began working at the NRO and, thus, they are not similarly situated with Plaintiff in the first instance. *See* Declaration of Wilmore at ¶ 3.[10] The evidence offered by Defendant also shows substantial differences in the complexity, type, and financial aspects of the work performed by these engineers as compared to Plaintiff. *Id*. at ¶ 5. The civil engineers at issue did not perform fungible, interchangeable, or easily comparable duties and, by the very nature of their jobs, they were each involved in projects of varying levels of complexity and difference. Plaintiff has made no showing of a substantial equality between her work and those of the other engineers.[11]

Plaintiff's fourth claim of racial discrimination is that Defendant discriminated against her, committed fraud, and misused tax-payer funds when Defendant falsified official Government documents to make it appear that a Caucasian male was performing the GS-12 grade or equivalent duties in the Nashville Resident Office that Plaintiff alleges she was actually performing. The factual basis for this claim appears to be that civil engineer Mike Lee, who was a GS-12 level engineer, was primarily assigned to the NRO and under the supervision of David Loyd but performed duties at several other locations that were within the Nashville Division – Center Hill, Wolf Creek, and Oak Ridge – and his paper trail of employment records sometimes showed that he was assigned to a resident office other than the NRO. *See* Affidavit of Wilmore at ¶ 3; Michael Lee SF-50 Forms

_____

[10] Mike Farmer is a civil engineer whom Plaintiff also claims was paid more than she was paid. *See* Docket Entry No. 115 at 11. However, it is undisputed that Mr. Farmer was not a federal employee employed by the USACE, but was an outside federal contractor. *See* Declaration of Wilmore at ¶ 9. Thus, he fails to constitute a comparable employee to Plaintiff.

[11] What Plaintiff essentially seeks is for this Court to declare that Defendant should have assessed her duties and paid her at a higher grade pay level. However, Title VII does not require that employers make fair or accurate assessments of employees' abilities or that they assign employees to appropriate positions, absent discriminatory intent or impact. *Mayberry v. Endocrinology-Diabetes Assoc.*, 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996). Nor is it within the factfinder's purview to evaluate the soundness of the employer's business judgment about its employees' job assignments in the absence of some evidence of discrimination. "The fact that Plaintiff disagrees with Defendant's assessment of her performance does not render Defendant's actions discriminatory." *Id*. at 1324.

(Docket Entry No. 117-6); Excerpts from the Deposition of Michael Lee (Docket Entry No. 115 at 129-135); and Excerpts from the Deposition of David Loyd (Docket Entry No. 130-5 at 4-6).

There appears to be no real dispute about these facts. There are no facts, however, supporting Plaintiff's allegation that Defendant (or any employee acting under the direction of or on behalf of Defendant) falsified documents, committed fraud or took any action to make it appear that Mike Lee was a "ghost employee" within the NRO who was being paid despite not performing work. Nor are there facts supporting Plaintiff's claims that she was performing the work attributed to Mike Lee. Defendant has fully explained the nature of Mike Lee's work duties and the reasons why he was not always physically located in the NRO. As noted above in the review of Plaintiff's first and third racial discrimination claims, she has not shown evidentiary support for her contention she was unlawfully denied a GS-12 level salary at the NRO, and the issue of Mike Lee's work duties and location likewise fails to lend support to Plaintiff's  claim of racial discrimination.  Plaintiff's attempt to mold the evidence about Mike Lee's position into a claim of racial discrimination is unavailing.


## D. Plaintiff's Second Racial Discrimination Claim and Her Retaliation Claim

Plaintiff's second racial discrimination claim and her retaliation claim both rely upon the same operative facts and are thus analyzed together.  Plaintiff alleges that she was discriminated against based upon her race and subjected to a reprisal for pursuing her EEO complaint when Defendant ceased the accretion process that was initiated in order to assess whether she should receive a noncompetitive promotion to a GS-12 pay grade.  An accretion of duties promotion is a promotion resulting from an employee's position being reclassified at a higher grade or level because of additional duties or responsibilities. *See Rand v. Sec'y of the Treasury*, 816 F.Supp.2d 70, 72 n. 1 (D.D.C. 2011).  It is noncompetitive in the sense that the employee is not being evaluated against any other applicant.

While the parties have presented the Court with a myriad of evidence about the accretion process, the essential underlying facts are simple and relatively undisputed. The accretion process was initiated at some point by Defendant Loyd in late May or early June 2012, in response to an inquiry by Plaintiff about a higher pay grade. *See* Docket Entry No. 115 at 270; and Excerpts from EEO November 8, 2012, Fact-Finding Conference (Docket Entry No. 117-10). The administrative part of the accretion process began but was put on hold at the directive of Chief Waddle in June because Plaintiff's EEO complaint was being mediated in July 2012, and Chief Waddle believed that the accretion process could be part of the settlement options. *See* Declaration of Wilmore at ¶ 10; and Declaration of Waddle made on December 12, 2012 ("2012 Waddle Declaration") (Docket Entry No. 130-4 at 4-6). The accretion process was then resumed but stopped before completion by Chief Waddle, *see* Declaration of Waddle made on July 7, 2016 ("2016 Waddle Declaration") (Docket Entry No. 119), at ¶ 3, with the practical result being that Plaintiff was not granted a noncompetitive promotion to a GS-12 pay level through an accretion of her duties and she remained at her GS-11 pay level while at the USACE. At issue is whether the process was stopped for unlawful reasons.

To the extent that this claim is raised as a racial discrimination claim, it proceeds under the same three step *McDonnell Douglas* analysis applicable to racial discrimination claims. To the extent that it is a raised as a claim for unlawful retaliation, it proceeds under a similar, albeit slightly different, analysis. Title VII forbids employers from discriminating against an employee because she has "'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006) (quoting 42 U.S.C. § 2000e-3(a)). The Sixth Circuit has held that, to establish a *prima facie* claim of retaliation under Title VII, a plaintiff must prove the following: (1) she engaged in activity protected by Title VII; (2) the defendant knew of her exercise of her protected rights; (3) the defendant subsequently took an adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment; and (4) there was a causal connection between the plaintiff's protected

activity and the adverse employment action. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 516-17 (6th Cir. 2009).

In the context of a retaliation claim, an action is adverse if the action might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington*, 548 U.S. at 68. If Plaintiff establishes a *prima facie* claim of retaliation, the burden-shifting analysis laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is then applied, under which the burden shifts first to Defendant to articulate a non-discriminatory reason for the adverse employment action, then back to Plaintiff to show, by a preponderance of the evidence, that the proffered reason is mere pretext for retaliatory motive. *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 674-75 (6th Cir. 2013), *rev'd on other grounds* by *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517 (2013).

Although Defendant argues that Plaintiff cannot show a *prima facie* case regarding the discontinued accretion process, Defendant has not made a sufficiently reasoned legal argument supporting this conclusion. *See* Memorandum in Support (Docket Entry No. 126-1) at 45-48; and Response in Opposition ( Docket Entry No. 130) at 18-20. The evidence before the Court shows that, during the time period at issue, vacant civil engineer positions at the NRO were few and far between and, as noted, there were no opportunities for Plaintiff to advance to a GS-12 pay grade position via a competitive promotion. The only avenue for Plaintiff to advance her position was by requesting an accretion of duties promotion. The Court views Defendant's act of stopping the accretion process and, thus, effectively denying Plaintiff's request to be promoted through accretion of duties to a GS-12 position, as an adverse employment action that satisfies her *prima facie* burden. Defendant's contention that no adverse action occurred because Defendant did not cease a promotion but merely "a preliminary package to determine if promotion was justified," *see* Docket Entry No. 126-1 at 46 and 52, relies on a distinction that is meaningless and is unpersuasive to the Court. Under Defendant's argument, Defendant would never commit an adverse action against a plaintiff who requested an accretion of duties promotion if Defendant merely ceased the process prior to its completion.

The Court also finds that Plaintiff has met the casual connection element of her *prima facie* case given that there is both, (1) a close temporal connection between Plaintiff's protected activity of making her EEO complaint in May 2012, and the stopping of the accretion process, and, (2) evidence that the EEO proceeding was a part of Chief Waddle's decision-making process as to at least the initial pause in the accretion process. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 524-25 (6th Cir. 2008). The burden-shifting analysis then moves to the next stage.

Defendant has proffered two reasons for why the accretion process was ultimately stopped by Chief Waddle: (1) Plaintiff's lack of the proper certification required for the GS-12 Civil Engineer position, specifically, completion of the Defense Acquisition Workforce Initiative Act ("DAWIA") Level 2 training; and, (2) Chief Waddle's view that Plaintiff was not working on projects that had a large enough scope and enough complexity to justify a GS-12 grade. *See* July 2016 Waddle Declaration at ¶¶ 4-5. The Court finds these explanations are legitimate, non-discriminatory reasons and they satisfy Defendant's burden of articulating lawful reasons for the adverse action.[12]

The burden now shifts to Plaintiff. For her claims to advance, she must show by a preponderance of the evidence that the reasons are pretext for racial discrimination or for retaliation. *Ondricko v. MGM Grand Detroit, LLC*, 689 F.3d 642, 653 (6th Cir. 2012). To establish pretext, Plaintiff can show that Defendant's proffered reasons (1) have no basis in fact; (2) did not actually motivate the adverse action; or, (3) were insufficient to explain the adverse action. *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014) (*citing Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (*en banc*)). Plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the employer's] explanation and infer that . . . the employer did not honestly believe in the proffered non-discriminatory reason for its adverse employment

---

[12] Although Defendant also refers to shortcomings in the accretion process and administrative steps that were not properly fulfilled, *see* Docket Entry No. 126-1 at 46-48, Defendant does not proffer these matters as the reason the accretion process was stopped by Chief Waddle. *Id*. at 49-52 The Court therefore views the parties' disputes over factual matters related to the administrative processing of the accretion process as immaterial.

action." *Braithwaite*, 258 F.3d at 493-94 (citations and internal quotations marks omitted). "Once a plaintiff establishes [her] *prima facie* case, this, along with disbelief of the defendant's proffered reasons for the negative employment action, will permit a finding of discrimination by the factfinder." *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 347 (6th Cir. 1997) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 511); *Jenkins v. Electrolux Home Prod., Inc.*, No. 2016 WL 6875970 at *8 (M.D. Tenn. Nov. 22, 2016) (Trauger, J.).

Although not clearly stated by Plaintiff, she appears to rely on all three methods of attacking Defendant's stated reason as pretext. Plaintiff's first argument is readily rejected. Plaintiff asserts that the reasons offered by Chief Waddle did not actually induce his decision and that he was motivated to stop the accretion process only because of Plaintiff's EEO complaint. *See* Docket Entry No. 141 at 53. Plaintiff bases this argument on her contention that the reasons set out in the July 2016 Waddle Declaration are a sham and contradict his prior testimony. *Id.* However, Plaintiff's contention is unsupported by the evidence. The July 2016 Waddle Declaration is entirely consistent with the December 2012 Waddle Declaration. Both declarations set out the two reasons at issue as the basis for Waddle's decision to finally stop the accretion process.[13] *Compare* 2012 Waddle Declaration at 5-6 *with* July 2016 Waddle Declaration at ¶¶ 4-5. The fact that the December 2012 Waddle Declaration also mentions putting the accretion process on hold pending mediation does not render the declarations contradictory, and Plaintiff has offered no other evidence supporting this argument.

Plaintiff next argues that there is no factual basis for Chief Waddle's view that she was not qualified to be a GS-12 Civil Engineer because she was not performing GS-12 work and was not working on projects that had a large enough scope and complexity to justify a GS-12 grade. *See* Docket Entry No. 141 at 55-56 and 59-61. In support, she offers argument and evidence buttressing her belief that she had, in fact, performed many GS-12 level duties while at the NRO, including

---

[13] The copy of the December 2012 Waddle Declaration filed by Plaintiff redacts the portion of the declaration in which Waddle sets out his two reasons for finally stopping the accretion process. *See* Docket Entry No. 115 at 302-03.

being the Contracting Officer's Representative ("COR") and working on all the projects, including large dam projects, assigned to the NRO. *Id.* She disputes that the monetary size of projects is relevant and contends that, regardless, she had worked on projects in the tens of millions of dollars while at the Fort Campbell Office. *Id.*

Although Plaintiff argues that Chief Waddle's evaluation of her work duties should be discounted, to prevail on this argument she must show that the evaluation was wholly without a basis in fact; in other words, that it was "factually false," *see Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009), *as recognized in Geiger v. Tower Auto.*, 579 F.3d 614, 621 (6th Cir. 2009); *Fox v. Yates Servs., LLC*, 2017 WL 512702 at *8 (M.D. Tenn. Feb. 8, 2017) (Trauger, J.). The evaluation of Plaintiff's duties and work is a matter for her supervisors and, ultimately for the person in the position Chief Waddle occupied, *Mayberry, supra*. Plaintiff's disagreement with or second-guessing of the soundness of her supervisor's judgment will not support a showing of pretext. *See Brennan v. Tractor Supply Co.*, 237 Fed.App'x 9, 21 (6th Cir. 2007); *Hein v. All America Plywood Co., Inc.*, 232 F.3d 482, 490 (6th Cir. 2000)*; Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000). In the absence of some evidence that Chief Waddle's evaluation of Plaintiff's work duties was factually false–evidence that Plaintiff fails to offer–the Court cannot say that Plaintiff meets her burden of showing pretext.

Finally, Plaintiff argues that her lack of DAWIA level 2 training certification is an insufficient basis to support Chief Waddle's decision. *See* Docket Entry No. 141 at 56-58. She points out that she was not made aware of the DAWIA certification requirements when hired in 2004, that they were not a part of her job position description until March 29, 2009, and that she had been working toward gaining them while at the NRO. *Id.* Plaintiff also points to evidence that ten other civil engineers, all of whom are white, had been promoted to a GS-12 Civil Engineer level

despite not having the DAWIA certification. *Id*. at 56 ¶ 11, and Docket Entry No. 141-1 at 43, 47,[14] and 68-69.[15]

To show that Chief Waddle's reliance on her lack of DAWIA certification was insufficient to motivate his decision to stop the accretion process, and therefore pretextual, Plaintiff must show by a preponderance of the evidence that other employees, particularly employees not in the protected class, were not subject to the same standard or requirement. *See Blizzard v. Marion Tech. College*, 698 F.3d 275, 286-87 (6th Cir. 2012); *Hawkins v. Ctr. for Spinal Surgery*, 34 F.Supp.3d 822, 842 (M.D. Tenn. 2014). At first blush, Plaintiff's undisputed evidence of several civil engineers that were promoted to a GS-12 level without obtaining DAWIA certification would appear to meet this burden. However, Chief Waddle has explained that having the proper level of DAWIA certification was important to him, even though it may not have been important to his predecessor in the Nashville District. *See* July 2016 Declaration of Waddle at ¶ 4. Plaintiff has not shown that any of the engineers in question were promoted to the GS-12 level during the tenure of Chief Waddle in the Nashville Division from August 2011 to June 2016. Thus, she has not shown that these engineers were actually comparable to her in the significant factor of who was making the ultimate and final decision that she challenges. In the absence of such evidence, Plaintiff fails to show that Chief Waddle's explanation for stopping the accretion process, namely his reliance on Plaintiff's lack of DAWIA certification, can be rejected as pretextual. *See Brennan*, 237 Fed.App'x at 20.

Admittedly, Plaintiff's latter two arguments that Defendant's reasons for its actions are pretextual are not as readily and easily rejected as her first argument.[16] However, despite the closeness of the call on the issue of whether her evidence shows pretext, Plaintiff has simply not met her burden of raising sufficient factual disputes to require a trial on these claims, and summary

---

[14] This appears to be an excerpt from the deposition of Chad Braun.

[15] This appears to be an excerpt from the deposition of Wilmore.

[16] The Court notes that Defendant's legal arguments on the issue of pretext were not particularly illuminating. Nevertheless, as discussed, the evidence offered by Plaintiff is just insufficient to show pretext.

judgment is therefore warranted in favor of Defendant on Plaintiff's racial discrimination and retaliation claims regarding the accretion promotion process.

## R E C O M M E N D A T I O N

Based on the foregoing, the undersigned Magistrate Judge respectfully RECOMMENDS that:

1. the motion for summary judgment (Docket Entry No. 115) of Plaintiff Debbie Dowell be DENIED;

2. the motion for summary judgment (Docket Entry No. 125) of Defendant Acting Secretary of the Army be GRANTED; and

3. this action be DISMISSED WITH PREJUDICE in favor of Defendant.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within **fourteen (14) days of service** of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

BARBARA D. HOLMES
United States Magistrate Judge