# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **DEBBIE L. DOWELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-01314** |
| | ) | **Judge Aleta A. Trauger** |
| **ROBERT M. SPEER, Acting Secretary,** | ) | |
| **Department of the Army,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Debbie Dowell brings claims of race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII") against the Secretary of the Army as her employer. (Compl., Doc. No. 1; Am. Compl., Doc. No. 66.) Now before the court are the plaintiff's Objections (Doc. No. 151) to the magistrate judge's Report and Recommendation ("R&R") (Doc. No. 148), recommending that the plaintiff's Motion for Summary Judgment (Doc. No. 115) be denied, that the defendant's Motion for Summary Judgment (Doc. No. 125) be granted, and that this action be dismissed. At the court's directive, the defendant has filed a Response to the Objections. (Doc. No. 156.)

When a party files objections to a magistrate judge's report and recommendation regarding a dispositive motion, the district court must review *de novo* any portion of the report and recommendation to which objections are properly lodged. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B) & (C). In conducting its review, the district court "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The court has conducted a *de novo* review of the parties' motions and the entire evidentiary record in light of the plaintiff's Objections and finds that material factual disputes preclude summary judgment in favor of the defendant on the plaintiff's claim that the defendant discriminated against her based upon her race and retaliated against her for filing an EEO charge when it terminated a pending noncompetitive accretion of duties promotion initiated by the plaintiff's supervisor. In all other respects, the R&R will be accepted. Accordingly, the plaintiff's Motion for Summary Judgment will be denied, and the defendant's Motion for Summary Judgment will be granted in part and denied in part.

I.      **Factual and Procedural Background**

The plaintiff's claims arise from her employment as a civil engineer with the United States Army Corps of Engineers ("USACE"), where she worked from 2004 until November 29, 2014.[1]

In November 2008, the plaintiff transferred from the USACE's Louisville District, Construction Division, Fort Campbell Resident Office, where she had worked for several years, to the Nashville District's Nashville Resident Office ("NRO"). She alleges that, while working at the NRO, she was subject to discrimination on the basis of race and retaliation for having filed an Equal Employment Opportunity ("EEO") complaint.

She initiated this action in June 2014. In her Second Amended Complaint, she set forth claims based on four specific events:

> 1.      The Plaintiff was discriminated against based upon her race (Black) when she was discriminatorily transferred to an established GS-12 grade equivalent Civil Engineer position description under the National Security Personnel System (NSPS) upon her transfer to the Nashville Resident Office in 2008, but was only paid a GS-11 grade or GS-11 equivalent salary to perform the duties of the position from 2008 to 2014, due to her race.
>
> 2.      The Plaintiff was discriminated against based upon her race (Black) and subjected to reprisal when the Agency ceased a pending Noncompetitive Accretion of

---

[1] At that time, she left to begin working for the United States Bureau of Indian Affairs.

Duties Promotion initiated by Plaintiff's Supervisor, upon being made aware that Plaintiff had filed a complaint with the Nashville EEO Office.

[3.]    The Plaintiff was discriminated against based upon her race (Black) when she was paid less than Caucasian male engineers to perform the same or greater duties in the Nashville Resident Office.

[4.]    The Defendant discriminated against Plaintiff based upon her race (Black), committed fraud, and misused tax-payer funds when he falsified official Government documents to make it appear that a Caucasian male was performing the GS-12 grade or equivalent duties in the Nashville Resident Office, which the Plaintiff was actually performing.

(2d Am. Compl. ¶ 9(1)–(6), Doc. No. 66.)[2]

After a contentious period of discovery, the parties filed their respective Motions for Summary Judgment in June and July 2016, along with Memoranda of Law, Statements of Undisputed Facts, and reams of supporting exhibits, deposition excerpts, and declarations. Both parties thereafter filed Responses, Replies, and Surreplies. The magistrate judge issued her R&R on February 14, 2017, specifically concluding that there are no material factual disputes and that the defendant is entitled to judgment in his favor as a matter of law on each of the plaintiff's claims. She therefore recommended that the defendant's motion be granted and that the plaintiff's be denied.

The plaintiff has filed thirty-four enumerated objections to the R&R. Many of the objections concern trivial, non-material factual disputes.[3] Substantively, however, the plaintiff

---

[2] The plaintiff also asserted discrimination claims based on two other events, but she subsequently withdrew the claims related to those events. (*See* Proposed 3d Am. Compl., Doc. No. 81; Order, Doc. No. 93.)

[3] For example, the plaintiff disputes the magistrate judge's adoption of the acronym "NVL" to identify the Nashville Resident Office, instead of or in addition to the acronym "NRO." (Objection #1, Doc. No. 151.) The plaintiff insists that the defendant adopted this acronym for the purpose of confusing the court. (*Id.*) She also objects to the magistrate judge's allegedly erroneous characterization of some of her claims (Objections #2 and #3). Many of the plaintiff's objections are repetitive and others are very general. For instance, she asserts that the magistrate judge erred in finding that no factual disputes "rise to the level of genuine issues of

objects to the magistrate judge's determination that the material facts are undisputed and that the defendant is entitled to summary judgment in his favor as a matter of law.

In order to respond efficiently to the plaintiff's Objections, the court considers *de novo* the Motions for Summary Judgment as to each of the plaintiff's claims. The court begins this analysis by focusing on Claim Two, which, as the magistrate judge recognized, presents the closest call and, therefore, requires the closest scrutiny by the court.

## II.     Claim Two: Discrimination and Retaliation

In Claim Two, the plaintiff asserts that the USACE discriminated against her based upon her race and retaliated against her for filing an EEO charge when it terminated a pending noncompetitive accretion of duties promotion initiated by the plaintiff's supervisor.

### A.     Factual Background

On April 30, 2012, after the plaintiff had been working at the NRO for over three years, the plaintiff sent an email to her direct supervisor, David Loyd, requesting an appointment to discuss the possibility of her upgrading from GS-11 grade to GS-12 grade. (Doc. No. 126-2, at 4.) Loyd forwarded the email to his supervisor, Johnny Wilmore. Wilmore responded that accretion was the only way to move the plaintiff to the GS-12 pay grade, "other than applying for a GS-12 vacancy somewhere," and suggested that they begin that process. (*Id.*) Wilmore formally initiated the accretion of duties process on May 23, 2012. (Doc. No. 126-7, at 19.) On the same date, the plaintiff first contacted the EEO office over the Nashville division (Doc. No. 20-1, at 1–2), but there is no evidence that any of her supervisors became aware of the EEO complaint on that date.

Accretion of duties is defined as "the gradual addition of duties that have been added to a

---

material fact" (Objection #6, Doc. No. 151, at 4 (citing R&R, Doc. No. 148, at 10) and that she "misapplied the standard of review." (Objection #7, Doc. No. 151, at 4.)

current employee's position and these additional duties result in a higher pay grade." (CHRA Noncompetititve Accretion of Duties Standard Operating Procedure ("Accretion SOP"), Doc. No. 126-7, at 32.) An accretion of duties promotion is accomplished through a process set out in the Accretion SOP. (*Id* at 31–36.) The purpose of an accretion of duties promotion, as the title of the SOP suggests, is to provide for the non-competitive promotion of a federal employee when "additional duties [have been] added to an employee's job which results in the position becoming a higher grade." (*Id.* at 31, 32.)

The Accretion SOP provides that the accretion of duties promotion process is initiated by the employee's supervisor, who submits a request for an accretion of duties promotion to an HR specialist. The specialist must "analyze each request . . . with the goal of protecting the merit principle of fair and open competition." (*Id.* at 33.) In performing the required analysis,

> the HR specialist must compare the existing, encumbered position description (PD) with the proposed PD. Determine if the employee will continue to perform the same basic functions, duties and tasks. Not all tasks need to be represented in the new PD, but a majority of the duties of the current job (at least 50%) must be included. If the revised PO does not include the old duties, then advise the manager on the inappropriateness on the effecting a promotion through accretion of duties . . . .

(*Id.* at 33.) In addition, among other steps, the HR specialist must determine whether the employee who is proposed for the accretion of duties promotion "meets qualifications, licensing/certification requirements and minimum educational requirements." (*Id.* at 34.) If the proposed employee does not meet those requirements, the HR specialist is to "advise management officials on alternative course(s) of action as the incumbent may not remain in the position" if the position is, in fact, accreted. (*Id.*)

In the process of preparing documentation for her accretion package, the plaintiff did not mark up her current GS-11 PD, as required by the Accretion SOP. Instead, she annotated a GS-

12 PD by highlighting in yellow those portions of it—essentially the whole thing—that she believed she was already performing; she also added a duty about training a lower grade intern engineer. (*See* Doc. No. 126-7, at 6.) Loyd, her direct supervisor, initialed or wrote "meets" in the margins next to each itemized duty of the same GS-12 PD and "true" with reference to the added task of training the intern. (*Id.*; *see* Doc. No. 115, at 156–59.) He testified that, by "meets," he meant that the plaintiff already was performing those tasks or would be capable of doing so. (Doc. No. 126-8, at 5.) In his deposition, Loyd stated that he did not think that the plaintiff's duties and responsibilities changed at any time while he was her supervisor, but he "just kept giving [her] work." (Doc. No. 126-8, at 3.) He also testified, however, that, when she began working for him, she was "performing at 11 and slowly accreted into the 12." (*Id.*)

Loyd forwarded the marked up GS-12 PD to Johnny Wilmore. On June 12, 2012, Wilmore forwarded it to Rachel Owens, an HR employee. (Doc. No. 126-2, at 3.) Owens initially responded that she would look at it and then forward it to Barbara Simpson. (*Id.*) According to the defendant, before an accretion of duties promotion package becomes an actual promotion in the Nashville District, the package must first be reviewed by supervisors and human resources personnel, and then must be approved by Barbara Simpson, the senior classifier, and the Position Management Committee. (*See* Doc. No. 126-3, at 22, 31–32, 52; Waddle Decl. ¶ 6, Doc. No. 119.)

On July 6, 2012, Owens emailed Wilmore to let him know that she needed the plaintiff's current PD, "marked up with the additional duties that she will be performing, to accrete her to the new GS-12." (Doc. No. 126-7, at 20–21.) On July 30, 2012, Wilmore responded to Owens, assuring her that they were "in the process" of marking up the plaintiff's current PD. (Doc. No. 126, at 20.) At the same time, however, he asked whether the accretion package had already been

sent to Barbara Simpson and rejected by her, or if it had been rejected by Owens herself on the basis that she needed a markup of the plaintiff's current PD. Wilmore emphasized that it was "very important for Jimmy [Waddle] to know the answer to [this] specific question." (*Id.*) Owens assured him that the accretion package had never been sent to the Senior Classifier, Barbara Simpson, because it had not yet been submitted in the proper form. Owens was "waiting on the marked-up [current] PD." (*Id.*)

Jimmy Waddle, Chief of Engineering and Construction for the Nashville Division and the plaintiff's third-level supervisor, was made aware around this time that the plaintiff had filed an EEO charge and that she was pursuing an accretion of duties promotion. Upon notification of a mediation meeting to try to settle the plaintiff's complaint, Waddle told Wilmore to put the accretion process on hold, "because it could be part of the settlement options." (Doc. No. 126-7, at 7.) The mediation meeting, however, conducted on July 26, 2012, did not result in a settlement. (*Id.* at 8.) During the meeting, the fact that the accretion process was on hold came up. Immediately after the meeting, Waddle instructed Wilmore to start working on the accretion again, but "not to send it out of Construction Branch until he discussed it further with [Waddle]." (*Id.*)

Waddle testified that, in preparation for the mediation meeting, he had "looked at all the credentials and grades and length of service of all engineers and geologists within the construction branch" as well as the "DAWIA Level certification[4] of all engineers and geologists within construction branch." (*Id.*) He noted at that time that the plaintiff was not DAWIA certified at Level 1 or Level 2, even though, according to Waddle, she had been encouraged to

---

[4] DAWIA stands for "Defense Acquisition Workforce Improvement Act." (Doc. No. 126-7, at 39.) The DAWIA Certification Compliance Program was created to "assist[] the USACE Acquisition workforce in meeting statutory certification and continuous learning requirements." (*Id.*)

take the training since she was hired. (*Id.*) Waddle testified that, after the mediation, he "decided to look further at [the plaintiff's] capability to manage construction projects." (*Id.*) He alleges that his review "showed that she had quality, time and cost growths associated with the projects which s[h]e managed," as well as "problems with inadequate documentation" and a "lack of motivation to get involved and visit her construction sites." (*Id.*) Based on these findings, Waddle allegedly became "further convinced she was not performing GS-12 work, nor was she performing at a GS-12 level," and these discoveries led him to put the accretion review on permanent hold. (*Id.*)

Waddle submitted a Declaration in which he avers that he stopped the accretion process because (1) he prefers to promote individuals through the competitive promotion process, which is the preferred method of promotion within USACE, rather than through the accretion of duties process; (2) the accretion of duties process is less fair than the competitive promotion process and the competitive process ensures that the best-suited employee is hired for the position; (3) the plaintiff was not working on projects that were sufficiently large and complex to justify a GS-12 grade; and (4) the plaintiff was not qualified to be a GS-12 Civil Engineer, because she was not certified by DAWIA. (Doc. No. 119 ¶¶ 3–5.)

The plaintiff, for her part, points out that her position, GS-11 engineer, was designated as an acquisition position and therefore subject to DAWIA standards, requiring DAWIA Level-2 certification, in March 2009, after she had transferred to that position in the NRO, but no one deemed her unqualified for her GS-11 position. (Doc. No. 138, at 31; Doc. No. 126-7, at 11–15.) She explained in her EEO charge and her agency testimony that she began taking classes toward DAWIA certification immediately upon learning of their existence, but, due to circumstances beyond her control and her work load, she was prevented from achieving the certification

quickly. (Doc. No. 20-1, at 8; Doc. No. 126-3, at 6.) She points to evidence in the record that supports a conclusion that DAWIA certification was not required for GS-11 or GS-12 engineers. (*See, e.g.*, Doc. No. 138-4, at 2–3.)[5] She also points out that the Acquisition Position Certification Standards submitted by the defendant state that, "[w]hen an employee is assigned to a position and does not meet the applicable certification standards . . . , the organization has 18 months in which to get the individual certified or obtain a waiver." (Doc. No. 126-7, at 38.) Likewise, each agency has 18 months to get incumbents of positions that are newly designated as having certification requirements certified or to obtain a waiver. (*Id.*) At the time of her deposition, the plaintiff was still working on DAWIA certification. Doc. No. 126-3, at 6.) She received her Level I certification on December 27, 2013. (Doc. No. 126-2, at 36.)

Regarding Waddle's allegations that the plaintiff's performance as a GS-11 engineer had been deficient, the plaintiff argues, correctly, that no objective evidence in the record supports Waddle's purported findings. To the contrary, the plaintiff's performance reviews in the record uniformly indicate good performance, and her direct supervisor, David Loyd, never expressed any dissatisfaction with her performance. While the plaintiff tacitly admits to modest cost growths, she asserts that the cost growths associated with various GS-12 engineers were much higher. (Doc. No. 138, at 33.)

B.      Discussion

In support of their Motion for Summary Judgment, the defendant argues that he is entitled to judgment as a matter of law on the plaintiff's retaliation and discrimination claims

---

[5] Although the plaintiff does not identify this document, it appears to be an excerpt from Johnny Wilmore's agency testimony. In responding to the investigator's question, "Is it required to have DAU/DAWIA certification to have a 12 position," the witness responded, "Not to my knowledge. I know there are people who occupy GS-12 positions who don't have it." (Doc. No. 138-4, at 2–3.)

based on the termination of the accretion review process because: (1) the plaintiff was not qualified for the promotion she sought; (2) the plaintiff cannot establish that she was subjected to an adverse employment action; (3) the plaintiff cannot establish a causal connection between the cessation of the accretion process and her engaging in protected activity for purposes of her prima facie case of retaliation; and (4) the plaintiff cannot rebut the defendant's proffered legitimate, non-discriminatory reason for its action.

### 1.    *Legal Standards – Title VII Discrimination and Retaliation*

Under 42 U.S.C. § 2000e–2(a)(1), an employer may not discriminate against any employee because of such individual's race or color. A plaintiff alleging that her employer violated this prohibition may prove her claim using either direct or circumstantial evidence. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 n.5 (6th Cir. 2008). Where, as here, a plaintiff relies on circumstantial evidence, courts typically apply the burden-shifting framework developed by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981), to determine whether the plaintiff has proffered sufficient evidence to survive summary judgment. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 775–76 (6th Cir. 2016).

Under the *McDonnell Douglas/Burdine* framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination. *Id.* at 776. To establish a prima facie case of race discrimination, a plaintiff must demonstrate that: "(1) she is a member of a protected group; (2) she was subjected to an adverse employment decision; (3) she was qualified for the position; and (4) . . . similarly situated non-protected employees were treated more favorably." *Id.* (quoting *Peltier v. United States*, 388 F.3d 984, 987 (6th Cir. 2004)).

A Title VII retaliation claim that a plaintiff seeks to establish with circumstantial

evidence is likewise analyzed under the *McDonnell Douglas* burden-shifting framework. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). To establish a prima facie case of retaliation under Title VII, the plaintiff must demonstrate that (1) she engaged in activity protected by Title VII; (2) her exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action. *Id.* (citations omitted). The Sixth Circuit has repeatedly "admonished that the plaintiff's burden at the prima facie stage is not onerous and poses a burden easily met." *Jackson*, 814 F.3d at 776 (citations and internal quotation marks omitted).

For both discrimination and retaliation claims, once the plaintiff establishes a prima facie case, "the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action." *Jackson*, 814 F.3d at 776 (Title VII discrimination case) (citation omitted); *Kirkland v. James*, 657 F. App'x 580, 584 (6th Cir. 2016) (Title VII retaliation case). If the defendant meets this burden, "the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination." *Jackson*, 814 F.3d at 776 (citation omitted); *Kirkland*, 657 F. App'x at 584.

### 2.    *Plaintiff's Prima Facie Case of Discrimination*

In this case, there is no dispute that the plaintiff, as an African American, belongs to a protected group for purposes of a Title VII discrimination claim. Neither party addresses the treatment of similarly situated employees in the context of discrimination related to the accretion process, but the defendant asserts both that the plaintiff was not actually subjected to an adverse employment action and that she was not qualified for the promotion she sought.

An adverse employment action, for purposes of Title VII discrimination claims, is

defined as a "materially adverse change in the terms and conditions of [plaintiff's] employment." *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999). Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation. *Smith v. City of Salem, Ohio*, 378 F.3d 566, 575–76 (6th Cir. 2004) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

The defendant argues that the cessation of the accretion process did not qualify as an adverse employment action, because the process was halted before the plaintiff actually completed her accretion package by marking up a GS-11 PD, as required by HR. The court is not persuaded by this distinction. It is clear that the plaintiff sought a job promotion and embarked on the accretion review process. That process was initially halted by Jimmy Waddle in anticipation of a mediation of the plaintiff's EEO charge. It is reasonable to infer from the record that the plaintiff and her supervisors did not proceed with completing her accretion package because of Waddle's directive that the process be put on hold. (Doc. No. 126-7, at 20.) After the mediation, Waddle initially told Wilmore to reopen the process but not to take any action without conferring first with Waddle. No other steps were actually taken, and it is clear from the record that the process was never actually reopened. These facts, viewed in the light most favorable to the plaintiff for purposes of the defendant's Motion for Summary Judgment, would allow a jury to find that the plaintiff was subjected to an adverse employment action when she was denied the opportunity to have her position reviewed for an accretion of duties promotion.

The defendant also claims that the plaintiff was not qualified for a GS-12 position because she did not have the DAWIA certification required by the GS-12 PD. The material facts concerning this issue are disputed. On the one hand, the plaintiff's direct supervisors clearly felt

that she was qualified. Moreover, there is some evidence in the record that other engineers were promoted to GS-12 without DAWIA Level 2 certification and, alternatively, that the DAWIA certification requirement could be waived or that the plaintiff could have been promoted and then granted 18 months within which to achieve the certification. (*See* Doc. No. 138-4, at 2–3; Doc. No. 126-7, at 38.) On the other hand, the GS-12 PD clearly requires DAWIA Level 2 certification (Doc. No. 115, at 156); and Human Resources Specialist Linda Miller testified that GS-12 engineers were required to have DAWIA Level 2 certification and that, to be eligible for an accretion of duties promotion, an employee has to be qualified for the higher position. (Miller Decl. ¶¶ 6–7, Doc. No. 127.)

In short, there are material factual disputes as to each element of the plaintiff's prima facie discrimination claim, whether the facts are viewed in the light most favorable to the plaintiff or to the defendant.

### 3. *Plaintiff's Prima Facie Case of Retaliation*

Here, there is no dispute that the plaintiff engaged in protected activity and that Jimmy Waddle was aware of that fact. Further, there is at least a question of fact as to whether the cessation of the accretion process was "harmful to the point that [it] could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

As for the causation element, Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). The plaintiff clearly has not presented sufficient proof of causation to warrant summary judgment in her favor.

To defeat the defendant's Motion for Summary Judgment, however, the plaintiff simply needs to provide evidence giving rise to a reasonable inference of causation.

In that regard, the court finds that the extremely close temporal proximity between the plaintiff's engagement in an unsuccessful mediation of a discrimination claim, a mediation in which Waddle participated, is sufficient to create a jury question on the element of causation. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009) ("[T]he combination of close temporal proximity between an employer's heightened scrutiny and that plaintiff's filing of an EEOC charge is sufficient to establish the causal nexus needed to establish a prima facie case of retaliation." (citation omitted); *see also E.E.O.C. v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) ("[A]t the prima facie stage the burden is minimal, requiring the plaintiff to put forth some evidence to deduce a causal connection between the retaliatory action and the protected activity, providing it is credible." (*quoted in Imwalle v. Reliance Med. Products, Inc.*, 515 F.3d 531, 550–51 (6th Cir. 2008))).

### 4.      *Defendant's Legitimate, Non-Discriminatory Reasons For Its Actions*

Given that the plaintiff has established at least a question of material fact as to each element of her prima facie case of discrimination and retaliation, the defendant must articulate a legitimate non-discriminatory reason for halting the accretion process. *Burdine*, 450 U.S. at 252. "This is merely a burden of production, not of persuasion, and it does not involve a credibility assessment." *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009).

The defendant has provided legitimate, non-discriminatory reasons for the cessation of the plaintiff's accretion of duties package. Jimmy Waddle testified that he made the decision to terminate the accretion process in part because the plaintiff did not have DAWIA Level 2 certification as required by the GS-12 PD. (Waddle Decl. ¶ 4, Doc. No. 119.) He stated:

"[e]nsuring engineers had their proper level of DAWIA certification may not have been as important to my predecessor as the [Chief of Engineering and Construction for the Nashville Division], but it is important to me." (*Id.*)

Second, Waddle explained his belief that the plaintiff was not working on projects sufficiently large and complex to justify a GS-12 grade. (*Id.* at 5.) While the GS-12 engineers working out of the Nashville Resident Office were working on dam restoration projects valued at tens of millions of dollars, the largest project the plaintiff was assigned to work on was valued at $4 to $5 million dollars. (*Id.*) On these projects, "the ramification of errors would be much less costly in terms of public safety and funds." (*Id.*) And third, in his agency testimony, Waddle stated that his decision that the plaintiff was not qualified was reinforced by his review of the plaintiff's performance history and his identification of a number of performance deficiencies. (Doc. No. 126-7, at 7–8.)

Poor performance and a failure to meet the objective qualifications of the desired job are legitimate, nondiscriminatory reasons for refusing to promote an employee. *Accord Imwalle*, 515 F.3d at 546. By articulating such reasons, the defendant has met his initial burden under the *McDonnell Douglas/Burdine* framework.

### 5. Pretext

A plaintiff may establish that an employer's stated reason or reasons for its employment action were pretextual by showing that the reasons (1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) are insufficient to explain the challenged conduct. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 586 (6th Cir. 2009) (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)). The plaintiff must produce "sufficient evidence from which the jury could reasonably reject [the defendants'] explanation

and infer that the defendants intentionally discriminated against [her]." *Johnson v. Kroger Co.*, 319 F.3d 858, 866 (6th Cir. 2003). "The jury may not reject an employer's explanation . . . unless there is a sufficient basis in the evidence for doing so." *Manzer*, 29 F.3d at 1083. "If the employer had an honest belief in the proffered basis for the adverse employment action, and that belief arose from reasonable reliance on the particularized facts before the employer when it made the decision, the asserted reason will not be deemed pretextual even if it was erroneous." *Upshaw*, 576 F.3d at 586 (citing *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 559 (6th Cir. 2009)).

With respect to Waddle's purported assessment of the plaintiff's job performance, the court finds that the plaintiff has pointed to evidence in the record from which a reasonable jury could conclude that this stated reason is factually false or not sufficient to motivate the adverse employment decision. The performance review for the plaintiff in the record is positive (*see, e.g.*, Doc. No. 115, at 86–87), and the plaintiff's direct supervisor never expressed unhappiness with her performance. In fact, both David Loyd and Johnny Wilmore appeared to be supportive of the accretion review and believed that the plaintiff either was already performing at the GS-12 level or was capable of doing so. In addition, the defendants have not pointed to any "particularized facts" upon which Waddle relied to conclude that the plaintiff's performance had been subpar in any way.

Likewise, Waddle's conclusion that the plaintiff was not performing at the GS-12 level is arguably insufficient to explain the challenged conduct—his unilateral termination of the accretion process. The entire purpose of the accretion review is to determine whether a particular position should be accreted up to a higher grade based on the job responsibilities that have accrued to that position since its original creation. (Accretion SOP, Doc. No. 126-7, at 32.) Loyd

and Wilmore, the plaintiff's direct supervisors, both apparently believed that the job had accreted and that the plaintiff was performing, at least in part, at the GS-12 level. The plaintiff has produced evidence from which a reasonable jury could conclude that she was performing all or most of the duties described on the GS-12 PD and that she was performing her tasks with substantial autonomy and relatively little supervision. (*See, e.g.*, Loyd Dep. excerpts, Doc. No. 126-3, at 40–44.) Further, as the plaintiff points out, the relative dollar-value of projects to which USACE engineers are assigned is not part of either the GS-11 or GS-12 PD. The court therefore finds that the plaintiff has shown that a jury question exists as to whether this proffered reason was untrue, did not actually motivate the challenged conduct, or was insufficient to explain the challenged conduct. *See Upshaw*, 576 F.3d at 586.

Finally, Waddle contends that one of his primary concerns about the plaintiff's request for an accretion promotion was that she was not DAWIA certified at either Level 1 or Level 2, and the GS-12 PD—like the GS-11 PD—specifically required DAWIA Level 2 certification. He also averred that compliance with this requirement was very important to him as Chief of Engineering and Construction for the Nashville Division, while acknowledging that the certification may not have been as important to his predecessors. (*See* Waddle Agency Decl., Doc. No. 126-7, at 8.) However, as set forth above, there are questions of fact as to whether DAWIA certification was actually required. Moreover, the record supports a conclusion that the lack of DAWIA certification was not necessarily disqualifying for Waddle. He testified that he reviewed the plaintiff's record in anticipation of the mediation meeting. He learned during that process that the plaintiff had not achieved DAWIA certification. However, even with that knowledge, he instructed Wilmore to "start working on [the accretion review] again." (Doc. No. 126-7, at 8.) Thereafter, however, he took it upon himself to continue digging into the plaintiff's

record. A jury could reasonably infer that Waddle was looking for reasons to justify denying the plaintiff the accretion review and accretion promotion in retaliation for her having brought a discrimination claim or on the basis of her race. And it was only in the course of this subsequent review that he allegedly unearthed evidence of the plaintiff's poor performance record, which, he claims, "further convinced him" that the plaintiff was not performing at the GS-12 level. (Doc. No.126-7, at 8.) As set forth above, however, the defendant has not produced documentation to support Waddle's conclusions about the plaintiff's performance record.

In short, the plaintiff has presented evidence from which a jury could conclude that the reasons proffered by Waddle for his action (1) had no basis in fact, (2) did not actually motivate the challenged conduct, or (3) are insufficient to explain the challenged conduct. *Upshaw*, 576 F.3d at 586. Neither the plaintiff nor the defendant is entitled to summary judgment on the plaintiff's claims related to the termination of the accretion review process.

## III. First, Third, and Fourth Claims of Discrimination

With respect to the plaintiff's first, third, and fourth claims of discrimination, the court is fully persuaded that the magistrate judge's application of the law to the material, undisputed facts was correct. The undisputed facts, viewed in the light most favorable to the plaintiff as the non-moving party vis-à-vis the defendant's Motion for Summary Judgment, establish that the defendant is entitled to judgment in his favor, for the reasons stated more fully in the R&R, and the plaintiff is not entitled to summary judgment in her favor.

To summarize briefly here: first, the plaintiff's initial temporary assignment to the Nashville Resident Office from November 10, 2008 until March 29, 2009 was indisputably temporary and lateral. The plaintiff appears to be insisting that there was an open GS-12-grade

equivalent position[6] in the Nashville office and that that was the only position into which she could have transferred. The undisputed evidence shows, however, that there was no actual open position in Nashville in November 2008. Instead, the plaintiff remained officially assigned to the Louisville office and continued to receive the same pay she would have received if she had not been on a temporary assignment—whether called a detail, transfer, or reassignment.

As set forth above, an "adverse employment action," for purposes of Title VII, means an employment action that "results in a 'materially adverse change in the terms and conditions of [plaintiff's] employment.'" *Momah v. Dominguez*, 239 F. App'x 114, 123 (6th Cir. 2007) (quoting *Hollins v. Atl. Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). A "materially adverse" change is "typically characterized 'by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *Id.* (quoting *Hollins*, 188 F.3d at 662). Consequently, "a purely lateral transfer . . . , which by definition results in no decrease in title, pay or benefits, is not an adverse employment action for discrimination purposes." *Id.* (citing *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)). The plaintiff's temporary lateral reassignment, undertaken at the plaintiff's request, therefore did not qualify as an adverse employment action.

Likewise, when the plaintiff was officially transferred to the Nashville Resident Office effective March 29, 2009, this was a lateral assignment. The defendant explained that the

---

[6] At the time the plaintiff transferred to Nashville, the Nashville Division of the Army Corps of Engineers was not using the General Schedule ("GS") pay system, but the Louisville Division was. Nashville, instead, was using the National Security Personnel System ("NSPS") pay system, which classified positions by reference to "YD") pay bands. At some point in 2009, the NSPS was abolished, and the Nashville Division began converting employees to the GS pay system. The plaintiff's pay level was converted to a GS-11 from YD-02 on May 23, 2010. (Doc. No. 19-3.) For the sake of simplicity, and consistently with the parties' practice in this litigation, the court will refer to the NSPS classifications as "GS-11-grade equivalent" or "GS-12-grade equivalent," as applicable.

position was essentially created for the plaintiff and that, if the position had been classified a GS-12-grade equivalent, the plaintiff would have had to compete for the position. Although the plaintiff inquired about whether the position could be made GS-12-equivalent, the undisputed facts establish that there was no GS-12-equivalent position available—the plaintiff's opinion to the contrary notwithstanding. Again, a lateral transfer is not an adverse employment action. In short, the plaintiff did not actually apply for a promotion and suffer rejection at that time. As the magistrate judge noted, a prima facie case based upon allegations of a failure to promote generally requires that there be an actual open position for which the plaintiff applied and was rejected. *See Watson v. City of Cleveland*, 202 F. App'x 844, 855 (6th Cir. 2006). Merely inquiring about a promotion is not sufficient. *Id.* Because the plaintiff cannot show that her initial temporary transfer or permanent reassignment to Nashville amounted to anything other than a lateral transfer, she cannot establish that she suffered an adverse employment action, a necessary element of her prima facie case of discrimination.

As for the third claim, because the plaintiff has not established an adverse employment action with regard to her assignment to a GS-11-equivalent position, the court has no need even to reach the question of whether other similarly situated employees were treated more favorably than the plaintiff. Regardless, the plaintiff has not established that she received less pay than similarly situated employees, because the persons with whom she seeks to be compared were already working at a GS-12-grade equivalent or higher pay grade when the plaintiff began working in Nashville, had higher certifications than she did, and were performing different types of work. In other words, they were not similarly situated. Moreover, under the GS system, the plaintiff was eligible for promotion to GS-12 or equivalent position only if she competed for the position of her position was accreted to GS-12, as discussed above.

And finally, the plaintiff has not established that the defendant discriminated against her, committed fraud, or misused taxpayer funds by allegedly falsifying government documents to make it appear that a white male employee was performing the GS-12-equivalent duties in the Nashville Resident Office that the plaintiff was actually performing. This claim is based entirely on the plaintiff's speculation.

The court therefore will overrule the plaintiff's objections and accept in its entirety the R&R's ruling on these claims.

IV.     **Conclusion**

For the reasons set forth herein, the court will overrule in part and grant in part the plaintiff's Objections and accept in part and reject in part the R&R. The plaintiff's Motion for Summary Judgment (Doc. No. 115) will be denied; the defendant's Motion for Summary Judgment (Doc. No. 125) will be granted in part and denied in part. The plaintiff's claims that the defendant discriminated against her based upon her race and retaliated against her for filing an EEO charge when it terminated a pending noncompetitive accretion of duties promotion initiated by the plaintiff's supervisor will be permitted to proceed; the plaintiff's remaining claims will be dismissed.

An appropriate order is filed herewith.

This 23rd day of March 2017.

ALETA A. TRAUGER
United States District Judge